IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **GREATGIGZ SOLUTIONS, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**COSTCO WHOLESALE CORPORATION**<br><br>**CVS HEALTH CORPORATION**<br><br>**WALGREENS BOOTS ALLIANCE, INC.**<br><br>Defendant. | **PATENT CASE**<br><br>**JURY TRIAL DEMANDED**<br><br>Civil Action No: 6-21-cv-00807<br><br>Civil Action No: 6-21-cv-00808<br><br>Civil Action No: 6-21-cv-00809 |

**DEFENDANTS' OPPOSED JOINT MOTION TO STAY PENDING RESOLUTION OF INSTACART'S DECLARATORY JUDGMENT ACTION AGAINST GREATGIGZ**

Defendants Costco Wholesale Corporation, CVS Health Corporation, and Walgreens Boots Alliance, Inc. (collectively, the "Customer Defendants") hereby jointly move to stay GreatGigz Solutions, LLC's ("GreatGigz") cases against the Customer Defendants pending resolution of the declaratory judgment action filed by Maplebear Inc. D/B/A Instacart ("Instacart") against GreatGigz in the Southern District of Florida (Case No. 9:21-cv-81998-DMM). Plaintiff GreatGigz opposes this motion.

**I.    INTRODUCTION**

GreatGigz's recent case filings against Instacart's customers should be stayed under the well-settled law giving precedence to a pending matter involving the true defendant (here, Instacart). On August 4, 2021 and August 5, 2021, GreatGigz filed patent infringement lawsuits in this Court against each of the Customer Defendants (collectively, the "Customer Suits") in the Western District of Texas. In the Customer Suits, GreatGigz accuses each of the Customer

Defendants of infringing U.S. Patent Nos. 6.662,194; 7,490,086; 9,760,864; and 10,096,000 (collectively, the "Asserted Patents") based on their use of Instacart's grocery delivery and pick-up software ("Instacart Software").

Previously, on August 14, 2020, GreatGigz filed a patent infringement lawsuit against Instacart in this District and Division. *See GreatGigz Solutions, LLC v. Maplebear, Inc. d/b/a Instacart,* No. 6-20-cv-00737. In that case, GreatGigz alleged infringement of the same four Asserted Patents on the basis of the same Instacart Software. Because Instacart does not have a regular and establish place of business in this District, Instacart quickly moved to dismiss for improper venue. *See id.* at Dkt. 11. While the motion to dismiss was pending, in an apparent attempt to manufacture venue in this District, GreatGigz filed these Customer Suits, alleging infringement of the same Asserted Patents and the same accused Instacart Software. Indeed, GreatGigz conceded in filings that the Customer Suits "assert the same patents as the instant case, and the defendants in the [Customer] Cases utilize Instacart's platform (the Accused Instrumentalities in the instant case) for merchandise delivery." Dkt. No. 29 at 1. On October 6, 2021, the Instacart case was dismissed for improper venue because GreatGigz failed to meet "its burden to establish proper venue under 28 U.S.C. § 1400(b)." *See* No. 6-20-cv-00737, Dkt. 30 at 7. The dispute is now pending in the Southern District of Florida, where on October 29, 2021, Instacart filed a declaratory judgment action against GreatGigz (the "Supplier Suit"), seeking a declaration that Instacart does not infringe the Asserted Patents and that the Asserted Patents are invalid.

The Customer Suits should be stayed pending resolution of the Supplier Suit. A stay would greatly simplify the issues in these Customer Suits because determinations in the Supplier Suit would apply equally in these Customer Suits, thereby serving judicial economy. A stay would not

prejudice GreatGigz because this action is in its infancy, and the Supplier Suit is pending in GreatGigz home jurisdiction. The Customer Suits should therefore be stayed pending resolution of the Supplier Suit.

## II.   LEGAL STANDARD

A district court has the inherent power to control its own docket, including the power to stay proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In deciding whether to stay litigation, courts in this District consider: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and the trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Lighthouse Consulting Group, LLC v. Truist Bank*, No. 2:19-cv-340-JRG, 2020 WL 6781977, at *2 (E.D. Tex. Apr. 7, 2020).

The "customer-suit exception" provides that "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990); *see also Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*, No. 2:16-cv-00618-RWS-RSP, 2017 WL 365398, at *7 (E.D. Tex. Jan. 25, 2017) (same). This is because the manufacturer has a "presumed greater interest in defending its actions against charges of patent infringement." *Glob. Equity*, 2017 WL 365398, at *7 (quoting *Spread Spectrum Screenings LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011)). "[C]ourts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Spread Spectrum*, 657 F.3d at 1357.

Moreover, "[b]ecause manufacturers are intimately involved in the design, operation, and use of the accused [product], they are in the best position to contest the validity and infringement

of [the] asserted patents." *Commissariat a L'Energie Atomique v. Tottori Sanyo Elec. Co., Ltd.*, No. 03-484-KAJ, 2004 WL 1554382, at *3 (D. Del. May 13, 2004). This is because, "in reality, the manufacturer is the true defendant in the customer suit," and "it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Katz*, 909 F.2d at 1464 (quoting *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977)).

To warrant a stay of the customer suit, the case involving the manufacturer "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue." *Spread Spectrum*, 657 F.3d at 1358 (citing Katz, 909 F.2d at 1464). Courts are instructed to use a "flexible approach" to avoid wasteful expenditure of resources, and therefore "stay[] proceedings if the other suit is so closely related that substantial savings of litigation resources can be expected." *In re Google* 588 F. App'x at 991; *see also In re Nintendo of Am. Inc.*, 756 F.3d 1363, 1365–66 (Fed. Cir. 2014) (the customer-suit exception is "designed to facilitate just, convenient, efficient, and less expensive determination" (citations omitted)).

In determining whether the customer suit exception applies, the court analyzes three factors: "(1) whether the customer-defendant in the earlier-filed case is merely a reseller; (2) whether the customer-defendant agrees to be bound by any decision in the later-filed case that is in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing product." *Kirsch Rsch. & Dev., LLC v. Bluelinx Corp.*, No. 6:20-CV-00316-ADA, 2021 WL 4555803, at *2 (W.D. Tex. Oct. 4, 2021) (quoting *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-cv-495, 2018 WL 4002776, at *5 (E.D. Tex. Aug. 22, 2018)). The "guiding principles in the customer suit exception cases are efficiency and judicial economy." *Spread Spectrum*, 657 F.3d at 1357 (citation omitted).

### III. ARGUMENT

Both the customer-suit exception factors and the general stay factors strongly favor a stay of the Customer Suits pending the outcome of the Supplier Suit. Adjudication of Instacart's claims will simplify, if not fully resolve, the issues in the Customer Suits. The Customer Suits are in their relative infancy, and a stay will not prejudice GreatGigz.

### A. The Court Should Stay the Case Under the Customer-Suit Exception Factors

The Court should stay the Customer Suits pending resolution of the Supplier Suit under the customer-suit exception because the Customer Defendants are mere end-users of Instacart's software, the Customer Defendants agree to be bound by the decisions in the Supplier Suit, and Instacart is the source of the Accused Instrumentalities at issue in the Customer Suits.

The posture of the Supplier Suit and Customer Suits is different than in most cases involving the customer-suit exception. Generally, a patentee first files a suit against one or more customers and the customer's manufacturer or supplier becomes involved after filing a later declaratory judgment action. *See, e.g.*, *CyWee*, 2018 WL 4002776. Here, the first-filed case was the Instacart suit filed in this District in August 2020, and that dispute is ongoing in the Supplier Suit. Nevertheless, as discussed in detail below, both the customer-suit exception factors and the general stay factors strongly favor a stay.

#### i. The Customer Defendants are mere end-users of Instacart's software, and Instacart is the true defendant in these disputes.

Instacart is the exclusive supplier of the Instacart Software accused of infringement in the Customer Suits. *See* Dkt. No. 1 ¶ 45 ("[Customer] utilizes Instacart, via the [Customer] website and via Instacart's website and Instacart's ancillary sites (including Instacart's various Mobile Applications) for same-day delivery of groceries and other items purchased by [its] customers"). The Customer Defendants are merely end-users of the software. *See id*. GreatGigz has previously

5

conceded that, "[w]ith regards to the [Customer] Cases, not only are the same patents asserted, but the defendants utilize the Instacart platform (the Accused Instrumentalities in the [Supplier] case)." No. 6-20-cv-00737, Dkt. No. 29 at 2. Accordingly, staying the Customer Suits is warranted. *See Nintendo*, 756 F.3d at 1366 ("Since Nintendo's liability is predicate to recovery from any of the defendants, the case against Nintendo must proceed first, in any forum.").

Resolution of the Supplier Suit will resolve these Customer Suits. If Instacart is found not liable of infringing the Asserted Patents (or if the Asserted Patents are found invalid), that would be dispositive of GreatGigz's claims against the Customer Defendants in the Customer Suits. *See, e.g., Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 185-86 (1952) (judgment in favor of a manufacturer accused of infringing patent bars suits against customers).

Alternatively, if GreatGigz obtains judgment in its favor against Instacart, it will have exhausted its rights as a patent holder and will be precluded from collecting damages with respect to the same infringing product from a downstream user like the Customer Defendants. *See, e.g., Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006) (precluding plaintiff from seeking damages from customers because damages already collected from manufacturer). Even if some minor issues were to remain after judgment in the Supplier Suit, resolution of the infringement claims will significantly simplify these Customer Suits. *See Katz*, 909 F.2d at 1464. Moreover, as the creator of the accused software, Instacart plainly has a "greater interest in defending its actions against charges of patent infringement." *Spread Spectrum*, 657 F.3d at 1357. In contrast, the Customer Defendants play no role whatsoever in designing or creating the Accused Instrumentalities, but merely use the Instacart platform. *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1082 (Fed. Cir. 1989) (collecting cases holding that a stay is appropriate where the customer is a mere reseller (or user)).

In sum, Instacart, not the Customer Defendants, is the true defendant to GreatGigz's patent infringement claims. Thus, on resolution of the Supplier Suit, no additional issues would remain to be resolved as to the Customer Defendants. Simply put, there is no reason to litigate the cases against the Customer Defendants while the case against Instacart is pending, and the Court should stay these Customer Suits pending final resolution of the Supplier Suit.

### ii. The Customer Defendants agree to be bound by the outcomes of the Supplier Suit.

The Customer Defendants agree to be bound by the outcome of the Supplier Suit, which leaves no Accused Instrumentalities unaddressed in these cases. This factor favors the application of the customer-suit exception. *See, e.g.*, *CyWee Grp. Ltd.*, 2018 WL 4002776 at *4 (holding that an agreement to be bound by the infringement determination in the supplier case supports a stay).

### iii. Instacart is the only source of the Accused Instrumentalities.

Here, it is undisputed that Instacart is the only source of the Accused Instrumentalities. *See* Dkt. No. 1 ¶ 45 ("[Customer] utilizes Instacart, via the [Customer] website and via Instacart's website and Instacart's ancillary sites (including Instacart's various Mobile Applications) for same-day delivery of groceries and other items purchased by [its] customers"). This factor thus favors a stay. *See Glob. Equity Mgmt.*, 2017 WL 365398 at *5 n.3.

### iv. Staying the case will serve the principles of efficiency and comity.

"[T]he guiding principles in the customer suit exception cases are efficiency and judicial economy." *Spread Spectrum*, 657 F.3d at 1357 (citation omitted). The Customer Suits and the Supplier Suit involve the same infringement claims, thus a stay of the Customer Suits until the Supplier Suit is resolved will avoid duplicative discovery and briefing, resulting in "substantial savings of litigation resources" for the parties and the Court. *See In re Google*, 588 F. App'x at 991.

### B. The General Stay Factors Weigh in Favor of Staying the Case

The general stay factors also demonstrate that a stay is in the interest of efficiency, judicial economy, and the just, speedy, and inexpensive resolution of this action. Here, all three factors weigh in favor of a stay.

#### i. Staying the Customer Suits will not unduly prejudice or present a clear tactical disadvantage to GreatGigz.

Staying the Customer Suits pending resolution of the Supplier Suit will not unduly prejudice or present a clear tactical disadvantage to GreatGigz.

***First***, the major issues relevant to GreatGigz's Customer Suits—patent validity and infringement—will be heard in the Supplier Suit. *See Glob. Equity Mgmt.*, 2017 WL 365398, at *10 (no undue prejudice where validity and infringement would be heard in manufacturer's suit). Indeed, GreatGigz's complaints in the Customer Suits all allege infringement on the basis of Instacart Software, establishing that the issues of infringement and validity in the Customer Suits are essentially identical to those in the Supplier Suit.

***Second***, as a non-practicing entity, GreatGigz faces no danger of marketplace harm, such as loss of market share or price erosion. Indeed, GreatGigz "did not seek a preliminary injunction in this case, undermining [any] claim of undue prejudice." *ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 358 (D. Mass. 2015). Thus, because GreatGigz faces no undue prejudice or tactical disadvantage, this factor weighs strongly in favor of a stay.

#### ii. Staying the Customer Suits will greatly simplify the issues.

Staying the Customer Suits pending resolution of the Supplier Suit will greatly simplify the issues. As discussed above, Instacart is the exclusive supplier of the Instacart Software accused of infringement in the Customer Suits, and the Customer Defendants are merely end-users of the software. *See* Dkt. No. 1 ¶ 45. Thus, resolution of the issues in the Supplier Suit in regards to

invalidity or non-infringement of the Asserted Patents would drastically simplify, or resolve altogether, the same issues in these consolidated cases. *See, e.g., Katz*, 909 F.3d at 1464; *Lighthouse Consulting Group, LLC v. Bank of America, N.A.*, No. 2:19-cv-250-JRG-RSP, 2020 WL 6781978, at *3 (E.D. Tex. Mar. 26, 2020) (noting that a stay would "result in a significant simplification" of the customer actions because the same issues would be resolved in the supplier action).

For example, a determination that the Instacart Software does not infringe the Asserted Patents or that the Asserted Patents are invalid would completely extinguish GreatGigz claims against the Customer Defendants. The Customer Defendants' use of the Instacart Software can only infringe the Asserted Patents to the extent that the Instacart Software, accused in the Supplier Suit, is found to infringe the Asserted Patents. Moreover, even if GreatGigz were to win a damages award in the Supplier Suit, the double-recovery rule would prevent GreatGigz from obtaining an additional award for use of the same infringing technology. *See Asetek Holdings, Inc. v. CoolIT Systems, Inc.*, No. C-12-4498-EMC, 2013 WL 5640905, at *2 (N.D. Cal. Oct. 11, 2013) (citing *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.2d 1298, 1303 (Fed. Cir. 2007) (stating that "a patentee may not sue users of an infringing product for damages if he has collected actual damages from a manufacturer or seller, and those damage[s] fully compensate the patentee for infringement by users")).

Further, discovery in the Customer Suits will focus largely on Instacart, which possesses most, if not all, of the relevant evidence concerning design, development, manufacturing, and operation of the accused Instacart Software. Instacart also possesses much of the relevant financial information, including revenues, costs, benefits, and licensing, concerning the accused Instacart Software. Thus, a stay of the Customer Suits would allow for more streamlined discovery in the

Supplier Suit and "would obviate the need for non-party discovery from [Instacart]" in the Customer Suits. *CyWee Group Ltd.*, 2018 WL 4002776 at *3; *see also Lighthouse Consulting*, 2020 WL 6781978, at *3 (finding that a stay "would seem to simplify the resolution of discovery disputes" in the customer actions because the supplier possessed the salient technical and financial information about the accused product). In sum, Instacart is the "true defendant in the customer suit," *Katz*, 909 F.2d at 1464, and adjudication of Instacart's claims in the Supplier Suit will simplify or resolve the claims in the Customer Suits.

### iii.  The Early Stage of the Customer Suits Favors a Stay.

The next factor asks whether discovery is complete and whether a trial date has been set. This inquiry is aimed at determining whether litigation has progressed significantly enough for a stay to be disfavored. *See, e.g.*, *Nichia Corp.*, 2016 WL 9558954, at *1 ("Stays are favored in the interest of conserving judicial and party resources, and avoiding duplic[ative] litigation.").

The Customer Suits are in their infancy. As of the filing of this Motion, only an Answer to GreatGigz Complaints has been filed in the Customer Suits. There has been no Case Readiness Status Report, no Case Management Conference, and no additional deadlines have been set. Accordingly, this factor weighs strongly in favor of a stay. *Cf. CyWee Grp. Ltd.*, 2018 WL 4002776, at *4 (finding this factor weighed in favor of a stay even though claim construction had begun and a pretrial conference had been set); *Lighthouse Consulting*, 2020 WL 6781978, at *3 (finding this factor weighed "slightly in favor of" a stay, even where "discovery has already been ongoing for a few months" and the claim construction hearing was less than 6 weeks away).

## IV.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that this joint motion be granted, and that the Customer Suits be stayed pending full and final resolution of the Supplier Suit.

Dated: November 5, 2021                    Respectfully submitted,

                                                   FISH & RICHARDSON P.C.

By: */s/ Lance Wyatt*
    Neil J. McNabnay
    macnabnay@fr.com
    Texas Bar No. 24002583
    Ricardo J. Bonilla
    rbonilla@fr.com
    Texas Bar No. 24082704
    Lance Wyatt
    wyatt@fr.com
    Texas Bar No. 24093397
    Adil A. Shaikh
    shaikh@fr.com
    Texas Bar No. 24117039

    1717 Main Street, Suite 5000
    Dallas, Texas 75201
    (214) 747-5070 (Telephone)
    (214) 747-2091 (Facsimile)

***Attorneys for Defendants***
***Costco Wholesale Corporation,***
***Cvs Health Corporation, and***
***Walgreens Boots Alliance, Inc.***

## **CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record were electronically served with a copy of the foregoing on November 5, 2021, via the Court's CM/ECF system.

                                              */s/ Lance Wyatt*
                                              Lance Wyatt